IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHERYL HOWRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-18-1004-STE |
| ) | |
| ANDREW M. SAUL, ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

I.  **PROCEDURAL BACKGROUND**

On December 19, 2012, Plaintiff filed an application for disability benefits alleging an onset date of August 2, 2009. (TR. 88). The Social Security Administration (SSA) denied the application at the initial and reconsideration levels, and on October 3, 2014,

an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 88-96). The Appeals Council denied Plaintiff's request for review, and Ms. Howry did not file an appeal in federal court. (TR. 48-49).

On March 22, 2016, Plaintiff filed a second application for disability benefits alleging an onset date of August 9, 2009. (TR. 24). Later, Plaintiff amended her onset date to October 4, 2014—the day following the date of the first unfavorable decision. (TR. 24). Plaintiff's date last insured was December 31, 2014. (TR. 25-26). Thus, the relevant period of disability for the second application was October 4, 2014 through December 31, 2014. *See Hamlin v. Barnhart,* 365 F.3d 1208, 1213 (10th Cir. 2004) (noting that the relevant period for assessing disability ran from the day after the adjudication on the prior application to the last disability insured date).

Initially and on reconsideration, the SSA denied Plaintiff's second application for benefits. Following a hearing, an ALJ issued another unfavorable decision. (TR. 24-32). The Appeals Council denied Plaintiff's request for review. (TR. 10-12). Thus, the second decision of the ALJ became the final decision of the Commissioner and the subject of the instant appeal.[1]

---

[1] In the decision, the ALJ stated that Plaintiff was not under a disability between August 9, 2009 (the original alleged onset date) through December 31, 2014 (the date last insured). (TR. 25, 32). The Court assumes this was a typographical error, as the ALJ recognized the amended onset date and the date last insured, which represents the period of disability. *See supra*, *Hamlin*.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity between her amended alleged onset date of October 4, 2014 through December 31, 2014, her date last insured. (TR. 27). At step two, the ALJ determined that Ms. Howry had the following severe impairments: degenerative disc disease with radiculopathy and osteopenia. (TR. 27). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 27).

At step four, the ALJ concluded that during the relevant period, Ms. Howry retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; is unable to climb ladders, ropes, and scaffolding; can occasionally reach overhead with the bilateral upper extremities; and can frequently, but not constantly, handle and finger bilaterally.

(TR. 28). With this RFC, the ALJ concluded that Ms. Howry was unable to perform any past relevant work. (TR. 30). Thus, the ALJ proceeded to step five and presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 60-61). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 61). The ALJ adopted

the testimony of the VE and concluded that Ms. Howry was not disabled at step five based on her ability to perform the identified jobs. (TR. 31-32).

### III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

### IV. ISSUES PRESENTED

Ms. Howry alleges: (1) the ALJ erred in his treatment of evidence which pre-dated the period of disability; (2) the ALJ failed to discuss Ms. Howry's inability to afford treatment when evaluating the RFC; (3) the ALJ failed to consider Plaintiff's mental

impairments at step four; and (4) a lack of substantial evidence to support the RFC. (ECF No. 18:8-27).

## V. CONSIDERATION OF EVIDENCE WHICH PRE-DATED THE PERIOD OF DISABLITY

As stated, the relevant period of disability is October 4, 2014 through December 31, 2014. *See supra*. According to Ms. Howry, the ALJ erred in his treatment of evidence which pre-dated this period. (ECF No. 18:8-15). Specifically, Plaintiff argues that the ALJ erred in evaluating: (1) a medical opinion from treating physician, Dr. Jeffrey Floyd, which was rendered in January 2013 and (2) all "treatment notes" prior to the amended onset date of October 4, 2014. (ECF No. 18:8-15). The Court agrees with Ms. Howry.

On January 3, 2013, Dr. Floyd authored a "Residual Functional Capacity Questionnaire" which outlined Plaintiff's specific abilities and limitations in several work-related areas. (TR. 308-314). According to Dr. Floyd, Plaintiff suffered from cervical stenosis, cervical radiculopathy, and lumbar degenerative disc disease which caused her pain and weakness and only allowed her to:

- sit and stand for 20 minutes at a time;
- sit, stand, and walk for a maximum of 2-3 hours during an 8-hour workday;
- occasionally lift less than 10 pounds;
- handle, finger, and reach, bilaterally, 20% of an 8-hour workday;
- never stoop, crouch, or kneel; and
- climb stairs 5% of an 8-hour workday.

(TR. 308-309; 311-312). Dr. Floyd also stated that Ms. Howry would need: (1) to sit in a recliner or lay down each day for a total of 2 hours, (2) a job that permitted shifting at will from sitting, standing, or walking, and (3) to take unscheduled breaks every 20-30 minutes, lasting 10-15 minutes each. (TR. 308-309; 311-312). Dr. Floyd based his opinions on direct observation, physical examination of Ms. Howry, medical records, clinical testing, Plaintiff's reports, and imaging studies. (TR. 314). Dr. Floyd's opinions clearly conflict with the RFC, which allows Ms. Floyd to:

- perform "light" work;[2]
- "occasionally" stoop, crouch, kneel, and climb stairs;[3]
- "occasionally" reach bilaterally; and
- "frequently" handle and finger, bilaterally.[4]

(TR. 28).

The ALJ noted Dr. Floyd's opinions, but gave them "no weight" because they had pre-dated the period of disability. (TR. 30). But the Tenth Circuit Court of Appeals has

---

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

[3] The *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* states that "occasionally" involves an activity existing up to 1/3, or 33% of an 8-hour day. U.S. Dept. of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993) Appendix C.

[4] The *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* states that "frequently" involves an activity between 1/3-2/3, or 33%-66% of an 8-hour day. U.S. Dept. of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993) Appendix C.

squarely held that evidence of limitations is still relevant even when it precedes the alleged onset date. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ.").

If an ALJ completely rejects an opinion from a treating physician, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted). Here, the ALJ's sole reason for discounting Dr. Floyd's opinions involved an issue of timing, with the ALJ noting that the opinions had been rendered "in January 2013, almost two years prior to the claimant's amended alleged onset date and prior to the prior ALJ decision." (TR. 30). The ALJ's lone rationale is an insufficient basis on which to completely reject Dr. Floyd's opinion. *See Ingle v. Berryhill*, No. CIV-16-385-CG, 2017 WL 3981349, at *5 (W.D. Okla. Sept. 11, 2017) ("the fact that [the treating physician's] Medical Opinion was informed by treatment that predated the disability period would not, *by itself*, justify rejection of that opinion.") (emphasis added) (citing *Hamlin*, *supra*). On this basis, remand is warranted for reconsideration of Dr. Floyd's opinion.

The ALJ also acknowledged other "treatment notes" but stated that because they were rendered "prior to the amended alleged onset date and part of a prior ALJ Decision … res judicata applie[d] to that evidence." (TR. 29). According to Plaintiff, the ALJ

7

improperly discounted that evidence, dismissing it under a principle of "res judicata." (ECF No. 18:13-15). The Court agrees.

Res judicata applies in the social security context when there has been a "previous determination or decision ... about [the claimant's] rights on the same facts and on the same issue or issues, and this previous determination has become final by either administrative or judicial action." *Poppa v. Astrue*, 569 F.3d 1167, 1170 (10th Cir. 2009). Here, because Ms. Howry did not appeal the first ALJ decision to the district court, res judicata prohibits a re-examination of that prior decision. *See Hunter v. Astrue*, 321 F. App'x 789, 791 (10th Cir. 2009) ("[Plaintiff] did not appeal [a previous] denial, and therefore res judicata prohibits reexamination of that final decision."). However, reconsideration of evidence from a previously adjudicated period does not re-open a claim that is barred under the principle of res judicata. *See Hamlin*, at 1215, n. 8. In fact, evidence from a prior decision which pre-dates the relevant period "is pertinent … if it illuminates the claimant's condition during the relevant period." *Hunter*, at 794.

Here, the ALJ based the RFC, in part, on an MRI from October 2, 2014. *See* TR. 30. Interestingly, that report pre-dates the relevant period by two days, but the ALJ obviously deemed it relevant. The MRI noted:

- Moderate diffuse degenerative disc disease;
- Loss of normal cervical lordosis with a mild reversal centered at C5-6;
- Mild degenerative central stenosis at C5-6;
- Moderate to severe stenosis at C5-6;

8

- Significant central canal space narrowing at C6-7; and

- Moderate severe stenosis at C6-7.

(TR. 319). The MRI evidence is consistent with the evidence the ALJ dismissed under a theory of res judicata, which, by the ALJ's own recitation, showed that Plaintiff:

- was diagnosed with osteopenia in 2012 and has been on narcotics for neck pain since 2012;

- noted ongoing complaints of neck pain, radiating down her left arm;

- exhibited decreased range of motion of the neck, as well as spinous weakness; and

- was diagnosed with herniated nucleus pulposus (cervical) and cervical radiculopathy.

(TR. 29).

Clearly, the first decision rendered final any further adjudication of the *claims* adjudicated therein, specifically, whether Ms. Howry was disabled between August 2, 2009 and October 3, 2014. However, under circumstances involving a separate, later period of disability, this Court has held that an ALJ was not "relieved … of [his] duty to consider *medical evidence* existing before [the onset date of the second application]." *Fee v. Colvin*, No. CIV-13-1107-W, 2014 WL 4929455, at *3 (W.D. Okla. Sept. 30, 2014) (emphasis added) (citing *Hamlin, supra*). Here, the ALJ stated that he would not consider any evidence that had pre-dated the amended alleged onset date. (TR. 29). However, the ALJ contradicted himself by relying on the October 2, 2014 MRI to support the RFC determination. (TR. 30). The ALJ's consideration of the MRI was proper, but his refusal to consider other evidence which pre-dated the relevant period was not. *See supra*,

9

*Hamlin*. The error was especially egregious because the evidence the ALJ discounted was consistent with the evidence the ALJ relied on.

In sum, the Court concludes that: (1) under *Hamlin*, evidence from a prior adjudicated period is relevant to adjudicating a new period of disability and should be considered and (2) res judicata applies to the consideration of claims, not evidence, the consideration of which does not re-open a previously adjudicated application for benefits. Accordingly, the Court concludes that the ALJ committed legal error in refusing to consider evidence which had been previously considered in the prior application under the principle of res judicata. *See Hamlin*; *Lowry v. Colvin,* No. CIV–13–43–L, 2014 WL 174469, at *1, *4 (W.D. Okla. Jan. 13, 2014) (adopting magistrate judge's recommendation to reverse the Commissioner's decision where the plaintiff's alleged onset date was based on the denial of a previous application and the ALJ failed to discuss medical evidence pre-dating that time; the magistrate judge admonishing that on remand, "the ALJ should discuss all of the medical evidence including the medical evidence that does not support his findings").

## VI. CONSIDERATION OF PLAINTIFF'S INABILITY TO AFFORD TREATMENT

Ms. Howry alleges that the RFC, which relied, in part, on "limited treatment notes,"[5] lacked substantial evidence because the ALJ failed to consider Plaintiff's inability to afford treatment. (ECF No. 18:15-18). Apparently, Plaintiff believes that the ALJ's reference to "limited treatment notes" referred to an overall lack of records supporting

---

[5] (TR. 30).

Plaintiff's claim. It is true, that an "inability to pay may provide a justification for a claimant's failure to seek treatment." *Threet v. Barnhart*, 353 F.3d 1185, 1190, n. 8 (10th Cir. 2003). However, it is not altogether clear that the ALJ's reference to "limited treatment notes" referred to a lack of evidence, which could have been explained by Ms. Howry's inability to afford treatment. Instead, it appears as though the ALJ's reference to "limited treatment notes" refers to his discounting any evidence which pre-dated the period of disability. *See* TR. 29-30 (ALJ's dismissal of Dr. Floyd's opinion and other evidence based on timing and a theory of res judicata). But as discussed, the ALJ's dismissal of such evidence was improper. *See supra*.

The Court does not recognize an independent error based on the ALJ's failure to consider Plaintiff's inability to afford treatment. However, the Court notes that on remand, if the ALJ relies on a lack of treatment, even after considering all of the evidence from the previously, adjudicated periods, he or she must also consider Ms. Howry's inability to afford treatment, which has been documented throughout the record. *See* TR. 75, 225, 230, 288, 291.

**VII.    CONSIDERATION OF PLAINTIFF'S MENTAL IMPAIRMENTS AT STEP FOUR**

At step two, the ALJ found that Ms. Howry's mental impairments involving depression and anxiety were not considered "medically determinable impairments." (TR. 27). As a result, the ALJ stated that these impairments "w[ould] not be considered in [evaluating] the residual functional capacity." (TR. 27). Citing *Wells v. Colvin*, 727 F.3d

1061 (10th Cir. 2003), Ms. Howry argues that the ALJ's cursory treatment of the mental impairments was legally insufficient. (ECF No. 18:18-21). The Court agrees.

In *Wells*, the ALJ had made a step-two finding that the plaintiff's mental impairments were not severe. *Wells*, 727 F.3d at 1068. The ALJ then stated: "[t]hese findings do not result in further limitations in work-related functions in the [RFC] below." *Id.* at 1069 (brackets in original). The Tenth Circuit Court of Appeals stated that the ALJ's language "suggest[ed]" that he may have relied on his step-two findings to conclude that the plaintiff had no limitations at step four based on mental impairments. *Id.* at 1069. If so, the Court stated, such a conclusion would be considered "inadequate under the regulations" because the RFC analysis at step four required "a more detailed assessment" "describing how the evidence *supports each conclusion*, citing specific medical facts." *Id.* (emphasis in original).

Under *Wells*, an ALJ may not substitute his findings of non-severity in lieu of a more thorough discussion of how the impairments may result in work-related limitations at step four. *Id.* at 1068-1071. Indeed, *Wells* states: "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Id.* at 1068-1069. Here, as argued by Ms. Howry, the ALJ did precisely what the Court prohibited under *Wells*—made a statement regarding the non-severity of a mental impairment at step two and thereafter refused to consider the impact of the impairment at step four. This error warrants remand.

## VIII. PLAINTIFF'S REMAINING ALLEGATION OF ERROR

Finally, Plaintiff alleges that the RFC lacked substantial evidence. (ECF No. 18:22-27). But the Court will not address this issue, as it will likely be affected on remand, following a reconsideration of Dr. Floyd's opinion, the evidence which pre-dated the period of disability, and Plaintiff's non-severe mental impairments. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) ("We will not reach the remaining issues raised by claimant because they may be affected by the ALJ's resolution of this case on remand.").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on September 27, 2019.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE